**Joan C. YARBROUGH, Plaintiff,**

v.

**SHELBY INSURANCE CO., Defendant.**

**No. 5:96–CV–435–2 (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 29, 1998.

---

Chuck Sylvester, Mr., Hawkinsville, GA, for Joan C. Yarbrough, plaintiff.

Dennis J. Webb, Mr., Atlanta, GA, Edward Alan Miller, Mr., Atlanta, GA, for The Shelby Insurance Company, defendant.

## ORDER

OWENS, District Judge.

Before the court is defendant Shelby Insurance Company's (Shelby's) motion for summary judgment in this matter alleging failure to pay benefits due under a home insurance policy. Having carefully considered the arguments of counsel, the relevant case law and the record as a whole, the court issues the following order.

## I. Background

Plaintiff Joan Yarbrough's home in Pineview, Georgia, was completely destroyed on July 1, 1992, when high winds broke off the top of a tree which fell across the power line to her home, causing a fire. Yarbrough's house was insured with a homeowner's policy from Shelby that included up to $96,119.20 for personal property/contents loss replacement (Pl. Response to Def. Motion for Summary Judgment, at 2). Within one year of the loss, Shelby had paid Yarbrough a total of $232,762.69, of which $78,056.78 was for personal property/contents losses. Soon thereafter, the company made additional payments to plaintiff for $5,078.75 and $9,769.25 respectively, bringing the grand total paid out to plaintiff for personal property/contents losses to $92,904.78.[1]

This suit is primarily concerned only with the $3,214.42 remaining balance potentially due under the policy for replacement of contents.[2] Plaintiff claims she is owed this amount, plus interest, costs, damages and penalties resulting from the insurer's failure to act in good faith in paying the full amount of the claim. In addition, the complaint also alleges Shelby owes plaintiff other amounts

---

1. The parties' correspondence and briefs reference different amounts depending on their understandings at each point in the ongoing dispute over the claim. Unless otherwise noted, the payment amounts cited in this order are taken from the letter plaintiff's attorney wrote to Shelby dated March 29, 1994 (Def.Exh. # 23 to Depo. of Steven Harkins), and from the Summary of Policy and Payments by Shelby (Def.Exh. # 2 to Depo. of Pl.).

2. Under the policy, personal property claims were paid in two steps. First, the Actual Cash Value of the lost item was paid out to the insured. The Actual Cash Value was calculated to take into account the depreciation attributable to each item of personal property based upon its current price if the item were to be replaced, the life expectancy of the item, and the item's actual age at the time of the fire. The amount of depreciation attributable to the item would be deducted from its Replacement Cost and would be paid out only after the claimant could prove,

by way of credit card receipts, checks, invoices, or other documents, that the item had indeed been replaced. This had to be done for each and every item of personal property claimed by the insured. If the insured failed to document that an item had in fact been replaced, then there would be no payment beyond the initial Actual Cash Value payment for that item.

For example, assume a policy-holder made a claim for a chair that would cost $100 to replace, had a life expectancy of ten years, and was four years old at the time of loss. The chair would be deemed to have depreciated in value by four tenths or 40% (four years out of the ten year life expectancy). Thus, the insurance company would first pay out the Actual Cash Value—the chair's replacement value minus depreciation of $40—which would be an initial payment of $60. In the future, once the insured could prove she actually purchased a new chair for $100, then the insurance company would pay her the additional $40, which payment would be called the Replacement Cost payment.

for the following items: interest on loans she obtained in order to replace the contents of her home; accountant fees paid by plaintiff in detailing her losses; salary lost in plaintiff's having had to take time off from work; attorney's fees; and damages for emotional distress she has suffered as a result of her troubles in trying to collect on the policy. Defendant Shelby argues that plaintiff's suit is barred by the one year limitations period for bringing claims contained in the insurance policy, and, alternatively, that it does not owe anything more to plaintiff because plaintiff has failed to document her claims beyond the $92,904.78 they have already paid her and because many of the things demanded by plaintiff are simply not covered by the policy.

## II. Undisputed Facts

The insurance policy provided that "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss" (Policy, at § 8, p. 11 of 18, Def.Exh. # 1 to Depo. of Pl.). The loss in this case occurred on July 1, 1992. The complaint was originally filed in state court on October 15, 1996, and was removed to this court on November 21, 1996.

In addition to the one year time limit on suits, the policy provided that there was a time limit of 180 days from the date of loss for the insured to file a claim for Replacement Cost in order to be paid the depreciation withheld from the initial payment of claims for contents loss (Policy, § 3 b. (5) of Loss Settlement Provision, p. 11 of 18, Def. Exh. # 1 to Depo. of Pl.; see note 2, supra). However, since plaintiff did not complete submission of her inventory of contents lost in the fire until May of 1993, Shelby granted her an extension of 30 days from May 25, 1993, to complete the replacement of her contents (Raymond Scott of Shelby's Letter to Pl. Attorney, p. 2, Def.Exh. 3–A to Depo. of Pl.; Thirteenth and Final Report dated May 25, 1993, Pl.Exh. # 1 to Depo. of Pl.).

Plaintiff failed to file any additional Replacement Cost claims before the June 25 deadline, but did file materials on July 19, 1993, approximately two weeks after the deadline had passed (Herrington Letter to Pl. dated September 2, 1993, Def.Exh. # 3 to Depo. of Pl.). W.O. Herrington, the agent handling plaintiff's claim, wrote plaintiff on September 2, 1993, and explained that there was a problem with some of the items she had submitted on July 19, 1993. He explained, as he had at before on at least one occasion, that she would not receive Replacement Cost above the Actual Cash Value amount she had already received unless she could provide documentation that she had indeed replaced the item. On page two of the letter, Herrington wrote:

> The items you last submitted ... Total $33,238.58, but it includes $3,994.75 to Middle Georgia Nursery for plants which were paid under the Trees, shrubs and Plants coverage. You also included grocery items and they were not depreciated, (you were paid the full replacement cost initially) and these would have to be deducted.

Later in that letter, Herrington stated:

> Shelby Insurance Company has requested that I re-open my file. They requested that I get in touch with you and explain what they need before any payment can be made.

> Since the thirty (30) days you were given to submit a claim for reimbursement has expired, they are making no commitment, but will be willing to review anything you submit.

> They [Shelby] have requested that I assist you if that is your desire.

On November 15, 1993, Herrington again wrote plaintiff and listed two additional adjustments that were made to the total amount of the contents loss. He also informed plaintiff that since the time for filing Supplemental Claims had expired on June 25, no further claims would be considered. Enclosed with the letter was a check for $5,078 .75 that was intended to be Shelby's final payment to plaintiff, and a Proof of Loss that was to be signed by plaintiff and returned to Shelby so that the file could be closed out. Soon thereafter, Herrington retired and Raymond Scott took over the handling of plaintiff's claim for Shelby.

Plaintiff felt that more was due her under the policy, and so rather than cashing the check she returned it and retained a lawyer, Chuck Sylvester, to help her review her pay-

ments under the policy. Mr. Sylvester wrote Shelby on March 29, 1994, indicating that pursuant to a conversation between him and Shelby's agents, the check for $5,078.75 would be retendered to plaintiff as partial payment of the money due her. Sylvester also wrote that after that check was included, the total amount paid to plaintiff under the policy for contents losses and Replacement Costs would be $83,135.54. According to Sylvester, this amount subtracted from the total amount due for contents loss under the policy left a deficit of $12,983.66 still due to plaintiff.

On April 5, 1994, Shelby's analyst Raymond Scott once again sent the $5,078.75 check to plaintiff's attorney as partial payment of the remaining balance, along with a letter informing him that plaintiff's file had been reopened in order to be reviewed by Steve Harkins, branch manager in the office in which Herrington had worked, for any potential replacement claim for personal property/contents loss still due plaintiff. Upon reviewing the file, Harkins concluded that one check for $16,484.72 had been credited solely as payment of contents when in fact it was payment for several different items, many of which were not properly considered contents. Harkins informed Shelby of this error, and soon thereafter Shelby approved another payment to plaintiff of $9,789.25 which was to be in full settlement of all claims. Harkins concluded that the remaining balance on the claim—approximately $3,200—was not owed to plaintiff because plaintiff had only documented contents replacement in the amount of $92,898.79. Finally, Harkins indicated that he would explain to plaintiff's attorney why plaintiff was not entitled to the full policy limit for contents, and that additional payments would be considered if plaintiff could provide the required documentation of replacement of items (Harkins Letter to Shelby dated March 24, 1995, Def.Exh. # 17 to Depo. of Harkins; Harkins memo to Scott dated April 14, 1994, Def.Exh. # 22 to Depo. of Harkins).

Plaintiff did not submit any additional documentation.

### III. Discussion

It is clear to the court from the foregoing recitation of facts that this case has arisen primarily from two circumstances: (1) plaintiff's inability to understand or to comply with the basic requirements for recovery of replacement costs under the policy—that is, the necessity that she present documentary proof that the item in question was indeed replaced *within the time period dictated by the policy;* and (2) defendant Shelby's mistake of designating one out of the many payments as being for contents loss when it was not, which mistake was corrected as soon as Shelby learned of it. Plaintiff, through her attorney, has taken these seemingly innocuous circumstances and built upon them a lawsuit alleging bad faith failure to pay a valid insurance claim, intentional infliction of emotional distress, negligence, and several other claims related to plaintiff's costs in supplying the information required by the policy in order for her to recover.

■ The facts do not support the claims alleged, for two equally compelling reasons. First, the court agrees with defendant Shelby that plaintiff's suit, filed nearly four years after the date of loss, is time barred. The one year limitation on suits is a common provision that "has been held to be firm and binding on numerous occasions" by Georgia courts. *W.C. Johnson v. Georgia Farm Bureau Mutual Insurance Company,* 141 Ga. App. 859, 234 S.E.2d 693, 694 (1977). In a very similar case, the Georgia Court of Appeals stated:

> To conclude that the policy limitations have been waived or estopped, there must be an affirmative promise or other act waiving the limitation; or an actual or constructive fraud leading the insured to believe the limitation time would be enlarged, or lulling him into the security of actually thinking the claim would in fact be paid without suit. Mere negotiation will not waive the limit.

*Bowers v. Safeco Insurance Co. of America,* 187 Ga.App. 229, 369 S.E.2d 547, 548 (1988).

Nothing like that occurred here. Contrary to plaintiff's argument, plaintiff was not told anything at all about the time limit for filing a lawsuit, and there is nothing in the record to call into question the one year limit contained in the policy. Rather, the evidence merely reflects that Shelby was willing to consider documentary evidence submitted by

plaintiff after the already extended time limit for submitting replacement cost claims had already passed, and even there Shelby remained noncommital. This time limit was totally separate from the provision barring suits brought more than one year after the date of loss, and so has no bearing on whether plaintiff's suit is time barred under the policy.

 The second reason militating against plaintiff's case is the absolute lack of evidence of bad faith or failure to fully pay the amounts due under the policy on the part of Shelby. To the contrary, the record makes plain that Shelby acted at all times in a helpful and courteous manner, even going so far as to consider documentary evidence submitted by plaintiff after time for submitting such claims had passed. It is true that Shelby inadvertently credited one payment toward the total payable for contents loss when it should not have been so credited. However, Shelby paid the amount, without any further delay, as soon as it was informed of the mistake. In other words, Shelby paid everything it was supposed to pay without argument as soon as it learned from its claims handlers that it was supposed to pay it. Plaintiff has simply failed to document that she is entitled to the final $3200 available under the policy for contents loss. Under these circumstances, there can be no claim of bad faith.

With regard to plaintiff's other claims, there is no evidence that such ancillary costs were ever covered by the policy.

### IV. Conclusion

For the foregoing reasons, the court finds that plaintiff's suit is time barred, and also that plaintiff's various claims are all without substantive merit. Accordingly, defendant Shelby's motion for summary judgment is **GRANTED AS TO ALL CLAIMS.**